UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICK J. LYNCH, as President of the
PATROLMEN'S BENEVOLENT
ASSOCIATION of the CITY OF NEW YORK,
INC. and the PATROLMEN'S BENEVOLENT
ASSOCIATION of the CITY OF NEW YORK,
INC.,

          Plaintiffs,

v.

The CITY OF NEW YORK, the NEW YORK
CITY POLICE DEPARTMENT, and
RAYMOND W. KELLY, as COMMISSIONER
of the NEW YORK CITY POLICE
DEPARTMENT,

          Defendants.

07 CIV 9337 (GBD)

ECF

**DECLARATION OF
DAVID M. NICHOLSON**

David M. Nicholson deposes and says as follows:

1. I am the Assistant General Counsel of the Patrolmen's Benevolent Association of the City of New York, Inc. ("PBA"), a municipal employee organization duly formed under the New York City Administrative Code, which represents all police officers employed by the Police Department of the City of New York ("NYPD"). I submit this declaration in support of the annexed Order to Show Cause seeking a temporary restraining order and preliminary injunction against the defendants for the continued enforcement of the NYPD's September 30, 2007 Interim Order, Reference P.G. 212 Series No. 52, with the subject "Alcohol Testing for Uniformed Members of the Service Involved in Firearms Discharges Resulting in Injury to or Death of a Person" ("Interim Order"). A true and correct copy of the Interim Order is attached to this Declaration as Exhibit A. I make this affidavit based on my review of Police Department records and conversations with witnesses.

2. The Interim Order provides, *inter alia,* that uniformed members of the service, whether on or off duty, who discharge a firearm will be tested using a portable breathalyzer test device ("PBT"). There is no requirement that there be suspicion

of intoxication before testing. If the reading on the PBT device is .08 or greater, the "subject" is to respond to an Internal Affairs Bureau ("IAB") testing location for a further test using an Intoxilyzer. If the member is apparently unfit for duty, NYPD Patrol Guide Procedure No. 206-12, entitled *Removal of Firearms From Intoxicated Uniformed Member of the Service* is controlling.

3. Alcohol testing of NYPD Police Officers without reasonable suspicion is wholly unnecessary. There are more than sufficient procedural protections already in place in the NYPD to ensure that officers who discharge their weapons while unfit for duty are detected and their firearms are removed. In addition, there are NYPD policies in place that provide for counseling and discipline as appropriate. Under the Department's Patrol Guide, all firearms discharges by NYPD police officers are already investigated by trained police professionals. All members of the Department who hold the rank of Captain and above are assigned the duty of investigating firearms discharges by members of the service. Those officers are specifically trained to detect the signs of alcohol and drug use.

4. I am aware of no facts and circumstances that evidence a causal link between the use of alcohol and firearm discharges by police officers in the NYPD.

5. As a result of the implementation of the Interim Order, police officers have already been the subject of demeaning, compelled searches and seizures.

   a. For example, on October 6, 2007, Gregory Chin, a police officer who was off-duty and on vacation, was involved in a critical incident which required him to discharge his weapon—consistent with his training, Department policy and the law—to protect himself and the lives of others. After the incident, Officer Chin was taken to St. Vincent's Hospital, where he was treated for trauma. Despite the extreme stress that he was under and the courage he displayed in the face of an armed threat, Officer Chin was ordered to undergo the indignity and embarrassment of a Breathalyzer test. While at the hospital, he was sequestered, observed closely by representatives of the IAB and treated like a subject, and was not allowed to drink anything before the Breathalyzer test was administered. The Breathalyzer came back negative for the use of alcohol.

   b. Just a few days before, on October 3, 2007, three detectives were tested for alcohol using the Breathalyzer device after they returned fire on a suspect who shot at them with a semiautomatic weapon. Despite the fact that two of the detectives were injured in the shoot-out, they, along with a third officer who discharged his weapon but was not injured, were forced to undergo alcohol testing shortly after the shoot-out concluded. All the tests came back negative for the use of alcohol.

6. Although it is impossible to predict exactly when another police officer will be involved in a firearms discharge resulting in injury or death, it is certain to occur

in the very near future, and it is certain to lead to alcohol testing of the officers. Less than three weeks have passed since the Interim Order went into effect and, already four officers have been subjected to unreasonable searches. Additional police officers will be forced to undergo the required testing if the Interim Order remains in effect.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
      October 18, 2007

                                                David M. Nicholson

# Exhibit A



# INTERIM ORDER

| SUBJECT: ALCOHOL TESTING FOR UNIFORMED MEMBERS OF THE SERVICE INVOLVED IN FIREARMS DISCHARGES RESULTING IN INJURY TO OR DEATH OF A PERSON | | |
|---|---|---|
| DATE ISSUED: 09-30-07 | REFERENCE: **P.G. 212 SERIES | NUMBER: 52 |

1. In an effort to ensure the highest levels of integrity at the scene of firearms discharges, all uniformed members of the service involved in firearms discharges, which result in injury to or death of a person, will be subject to Department administered alcohol testing.

2. Accordingly, when a uniformed member of the service, on or off duty, is involved in a firearms discharge within New York City which results in injury to or death of a person, the following procedure will be complied with:

**PURPOSE**  To ensure the highest levels of integrity at the scene of police involved firearms discharges which result in injury to or death of a person, on or off duty, within New York City.

**PROCEDURE**  When involved in, or responding to the scene of a police involved firearms discharge which results in injury to or death of a person, on or off duty, within New York City:

**UNIFORMED MEMBER OF THE SERVICE**
1. Request immediate response of patrol supervisor.
2. Comply with the provisions of P.G. 212-29, "Firearms Discharge by Uniformed Members of the Service."

**PATROL SUPERVISOR**
3. Notify Operations Unit of shooting, immediately, and request response of Internal Affairs Duty Captain, Internal Affairs personnel and the Patrol Services Bureau Duty Inspector and Duty Captain.

**DUTY CAPTAIN/ INSPECTOR**
4. Inform uniformed member(s) of the service who discharged their firearm that they will be subject to alcohol testing.
5. Ensure involved member(s) of the service remain on the scene when feasible and consistent with safety (i.e., hospitalization not immediately required); pending arrival of Internal Affairs Bureau personnel assigned to administer alcohol test.
6. Notify IAB Command Center of location of involved member(s) of the service if they are removed from location of firearms discharge.

**IAB COMMAND CENTER**
7. Notify assigned IAB personnel and the IAB Duty Captain of any pertinent information including any change of location of involved member(s) of the service.

1 of 4

| | | |
|---|---|---|
| **INTERNAL AFFAIRS BUREAU DUTY CAPTAIN** | 8. | Respond to location and confer with Duty Captain/Inspector on scene. |
| | 9. | Advise the subject member that he or she may be tested by a number of different means, such as the PBT device and the Intoxilyzer. |
| | 10. | Conduct alcohol test, using a PBT (portable breathalyzer test) device in a private setting, on uniformed member(s) of the service who discharged a firearm. |
| | | a. Conduct the testing process in a private setting (e.g., Nearest Department facility, Department auto being used by the supervisor concerned) in a dignified, respectful fashion. |
| | 11. | If the reading on the PBT device is less than .08, no further testing is required at this time. |
| | 12. | If the reading on the PBT device is .08 or greater, which according to Section 1192 of the Vehicle and Traffic Law of the State of New York is indicative of intoxication, immediately notify Highway I.D.T.U. to respond to the IAB testing location to test the subject member using the Intoxilyzer that is maintained at the IAB facility. (It should be emphasized that the Intoxilyzer test at the IAB facility will be conducted by an I.D.T.U. technician.) |
| | | a. Member(s) involved will be transported to the IAB testing facility by IAB personnel. |
| | | b. A Highway District supervisor must be present during all phases of the testing procedure. |
| | 13. | In the event that alternate arrangements must be made, the Intoxilyzer test will be conducted at the closest I.D.T.U. facility. |
| | | a. Member(s) involved will be transported to the I.D.T.U. testing facility by I.A.B. personnel. |
| | | b. A Highway District supervisor must be present during all phases of the testing procedure. |

*NOTE*

*The I.D.T.U. technician will utilize a specially developed form entitled **Ordered Breath Test Instruction Sheet** to interview the subject member(s), and a specially developed checklist entitled **Intoxilyzer Operational Checklist** to conduct the test. The entire Intoxilyzer testing process, including the reading of the test results, will be videotaped by another member of the Highway District. In cases where there is an Intoxilyzer reading of .08 or greater, a copy of the videotape will be provided to the I.A.B. Duty Captain concerned, who will follow all applicable Departmental procedures to safeguard the tape for evidentiary purposes.*

| | | |
|---|---|---|
| **INTERNAL AFFAIRS BUREAU DUTY CAPTAIN** | 14. | In order to determine fitness for duty, record and then take into account the Intoxilyzer reading, the PBT reading, and any other related indicia of intoxication, as indicated in Appendix "A". |
| | | a. If the member is apparently unfit for duty, be guided by the procedures contained in P.G. 206-12, "Removal of Firearms from Intoxicated Uniformed Member of the Service" and other appropriate Department procedures. |

*NOTE*

*If the subject member is determined to be unfit for duty, the IAB Command Center will be notified at (212) 741-8401 and a log number will be obtained.*

**INTERIM ORDER NO. 52**

2 of 4

**ADDITIONAL DATA**     Members of the service are reminded of the contents of Patrol Guide procedures 203-04, "Fitness For Duty" and 204-08, "Firearms – General Regulations" as they relate to the use of alcohol and the possession of firearms while off duty.

Members should be aware that it would be prudent not to ingest alcoholic beverages up to four (4) hours prior to the commencement of their tour of duty.

**RELATED PROCEDURES**     Firearms Discharge by Uniformed Members of the Service (P.G. 212-29)
Removal of Firearms from Intoxicated Uniformed Member of the Service (P.G. 206-12)

3.   Any provisions of the Department Manual or any other Department directive in conflict with the contents of this order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
All Commands

## APPENDIX "A"

### INDICIA OF INTOXICATION

Face to face observation and interaction with the subject member allows the supervisor concerned to use his or her senses to obtain "evidence" of alcohol intoxication:

* The sense of sight
* The sense of hearing
* The sense of smell

**SIGHT**

* Bloodshot eyes
* Flushed face
* Soiled, mussed, disarrayed clothing
* Fumbling (e.g., dropping paperwork, keys etc.)
* The presence of alcohol containers
* Physical coordination (e.g., swaying, staggering, unsteady, falling, wobbling, sagging knees, using a wall or furniture as a prop)
* Unusual actions (e.g., hiccupping, belching, vomiting, fighting, sleepy, urinating)

**HEARING**

* Slurred speech
* Admission of drinking
* Inconsistent responses
* Incoherent
* Abusive language, profanity
* Antagonistic
* Unusual statements

**SMELL**

* Odor of alcohol on breath
* "Cover Up" odors (e.g., breath spray, mints)
* Open alcoholic beverages
* Unusual odors

**NOTE:** These traits are illustrative; this is not meant to be a complete list of indicia.