UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK J. LYNCH, as President of the PATROLMEN'S BENEVOLENT ASSOCIATION of the CITY OF NEW YORK, INC. and the PATROLMEN'S BENEVOLENT ASSOCIATION of the CITY OF NEW YORK, INC., <br><br> Plaintiffs, <br><br> v. <br><br> The CITY OF NEW YORK, the NEW YORK CITY POLICE DEPARTMENT, and RAYMOND W. KELLY, as COMMISSIONER of the NEW YORK CITY POLICE DEPARTMENT, <br><br> Defendants. | 07 CIV 9337 (GBD) <br><br> ECF <br><br><br> **DECLARATION OF JAMES E. McCABE** |

James E. McCabe deposes and says as follows:

1. I am over 18 years of age and have personal knowledge of each of the facts stated in this Declaration.

2. I am a retired New York City Police Department Inspector having first been appointed to the Police Department on January 9, 1986. During my tenure with the Department, I held the following ranks: Police Officer, Sergeant, Lieutenant, Captain, Deputy Inspector, and Inspector. I served in a variety of assignments including: Midtown North Precinct, 10th Precinct, Office of Emergency Management, Operations Division, First Deputy Commissioners Office, 113th Precinct, 110th Precinct, Police Commissioners Office, Police Academy, Training Bureau, and most recently the Commanding Officer of the NYPD's Office of Labor Relations. Currently, I am an Assistant Professor of Criminal Justice at Sacred Heart University in Fairfield, CT. My teaching and research interests include police organizational behavior, policy, and operational effectiveness.

3. I am very familiar with the Department's policies and procedures regarding fitness for duty, weapons possession by on- and off-duty members of the service, use of force and

use of force and deadly physical force, the investigation of firearms discharges by members of the service, removal of firearms from intoxicated members of the Department, and the various policies and practices of the Department regarding detecting, counseling, and disciplining officers who are found to be unfit for duty due to the consumption of alcohol.

4. Upon promotion, all captains must attend training at the Police Academy, including mandatory instruction in the investigation of firearms discharges by members of the service. In addition, all captains are trained to make determinations regarding police officers' fitness for duty and to note such determinations in their investigative reports based on their personal observations of the officers and the totality of the facts known to them. I received such training upon my promotion to the rank of Captain in September 1998, and subsequently had occasion to investigate firearms discharges by members of the service and to make fitness for duty determinations as part of my investigations.

5. Under Procedure No. 203-04, all members of the service are required to remain fit for duty at all times. In addition, the regulation instructs officers of their absolute responsibility to remain fit for duty while in possession of their firearms and sets forth the following penalty for violations of the policy: "Any Misconduct involving a Member's misuse of a firearm while unfit for duty due to excessive consumption of, and intoxication from, alcohol will result in that member's termination from the Department." Upon deeming a member of the service unfit for duty due to intoxication, Commanding Officers/Duty Captains are required to remove all firearms from the member pursuant to Patrol Guide Procedure No. 206-12, entitled *Removal of Firearms From Intoxicated Uniformed Member of the Service*, place the member on modified assignment or suspension (as appropriate), and advise the member of the availability of the Counseling Service Program.

6. Pursuant to Patrol Guide Procedure No. 212-29, entitled *Firearms Discharge by Uniformed Members of the Service,* the primary actors responsible for investigating police-involved firearms discharges are those members of the Department holding the rank of Captain and above. These investigating officers are responsible for making all initial findings and recommendations, including a decision as to whether the shooting violated Department guidelines, including the Fitness for Duty regulation contained in Patrol Guide Procedure No. 203-04, entitled *Fitness for Duty*.

7. In addition to the punitive measures employed by the Department to address issues relating to alcohol overindulgence, the Department is proactive in identifying police officers suspected of alcohol abuse. It has implemented programs and created specific units, including the Early Intervention Monitoring Unit and the Counseling Unit, to assist members that are experiencing alcohol related problems.

8. In my experience, the Department's policies and practices regarding firearms

discharge investigations and removal of firearms from intoxicated members, as well as its policies and practices for detecting, counseling, and disciplining members of the service who become unfit for duty due to alcohol consumption were sufficient without the addition of Interim Order, Reference P.G. 212 Series No. 52 ("Interim Order"). In addition, the Department's policies have adequately protected the interests of the Department and the safety of the public while affording individual police officers their rights under the Constitution.

9. During my tenure with the Department, I was unaware of any facts or circumstances that would necessitate implementation of a suspicionless alcohol testing policy like the one contained in the Interim Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
October 17, 2007

James E. McCabe