# EXHIBIT A



# INTERIM ORDER

| SUBJECT: | ALCOHOL TESTING FOR UNIFORMED MEMBERS OF THE SERVICE INVOLVED IN FIREARMS DISCHARGES RESULTING IN INJURY TO OR DEATH OF A PERSON | |
|---|---|---|
| DATE ISSUED: | REFERENCE: | NUMBER: |
| **09-30-07** | ****P.G. 212 SERIES** | **52** |

1.      In an effort to ensure the highest levels of integrity at the scene of firearms discharges, all uniformed members of the service involved in firearms discharges, which result in injury to or death of a person, will be subject to Department administered alcohol testing.

2.      Accordingly, when a uniformed member of the service, on or off duty, is involved in a firearms discharge within New York City which results in injury to or death of a person, the following procedure will be complied with:

**PURPOSE**          To ensure the highest levels of integrity at the scene of police involved firearms discharges which result in injury to or death of a person, on or off duty, within New York City.

**PROCEDURE**          When involved in, or responding to the scene of a police involved firearms discharge which results in injury to or death of a person, on or off duty, within New York City:

**UNIFORMED**          1.      Request immediate response of patrol supervisor.
**MEMBER OF**          2.      Comply with the provisions of *P.G. 212-29, "Firearms Discharge by*
**THE SERVICE**                  *Uniformed Members of the Service."*

**PATROL**          3.      Notify Operations Unit of shooting, immediately, and request response of
**SUPERVISOR**                  Internal Affairs Duty Captain, Internal Affairs personnel and the Patrol
                 Services Bureau Duty Inspector and Duty Captain.

**DUTY**          4.      Inform uniformed member(s) of the service who discharged their
**CAPTAIN/**                  firearm that they will be subject to alcohol testing.
**INSPECTOR**          5.      Ensure involved member(s) of the service remain on the scene when
                 feasible and consistent with safety (i.e., hospitalization not immediately
                 required); pending arrival of Internal Affairs Bureau personnel assigned
                 to administer alcohol test.
         6.      Notify IAB Command Center of location of involved member(s) of the
                 service if they are removed from location of firearms discharge.

**IAB**          7.      Notify assigned IAB personnel and the IAB Duty Captain of any
**COMMAND**                  pertinent information including any change of location of involved
**CENTER**                  member(s) of the service.

| | | |
|---|---|---|
| **INTERNAL AFFAIRS BUREAU DUTY CAPTAIN** | 8. | Respond to location and confer with Duty Captain/Inspector on scene. |
| | 9. | Advise the subject member that he or she may be tested by a number of different means, such as the PBT device and the Intoxilyzer. |
| | 10. | Conduct alcohol test, using a PBT (portable breathalyzer test) device in a private setting, on uniformed member(s) of the service who discharged a firearm. |

        a.     Conduct the testing process in a private setting (e.g., Nearest Department facility, Department auto being used by the supervisor concerned) in a dignified, respectful fashion.

11.    If the reading on the PBT device is less than .08, no further testing is required at this time.

12.    If the reading on the PBT device is .08 or greater, which according to Section 1192 of the Vehicle and Traffic Law of the State of New York is indicative of intoxication, immediately notify Highway I.D.T.U. to respond to the IAB testing location to test the subject member using the Intoxilyzer that is maintained at the IAB facility. (It should be emphasized that the Intoxilyzer test at the IAB facility will be conducted by an I.D.T.U. technician.)

        a.     Member(s) involved will be transported to the IAB testing facility by IAB personnel.

        b.     A Highway District supervisor must be present during all phases of the testing procedure.

13.    In the event that alternate arrangements must be made, the Intoxilyzer test will be conducted at the closest I.D.T.U. facility.

        a.     Member(s) involved will be transported to the I.D.T.U. testing facility by I.A.B. personnel.

        b.     A Highway District supervisor must be present during all phases of the testing procedure.

*NOTE*

*The I.D.T.U technician will utilize a specially developed form entitled **Ordered Breath Test Instruction Sheet** to interview the subject member(s), and a specially developed checklist entitled **Intoxilyzer Operational Checklist** to conduct the test. The entire Intoxilyzer testing process, including the reading of the test results, will be videotaped by another member of the Highway District. In cases where there is an Intoxilyzer reading of .08 or greater, a copy of the videotape will be provided to the I.A.B. Duty Captain concerned, who will follow all applicable Departmental procedures to safeguard the tape for evidentiary purposes.*

**INTERNAL AFFAIRS BUREAU DUTY CAPTAIN**

14.    In order to determine fitness for duty, record and then take into account the Intoxilyzer reading, the PBT reading, and any other related indicia of intoxication, as indicated in Appendix "A".

        a.     If the member is apparently unfit for duty, be guided by the procedures contained in *P.G. 206-12, "Removal of Firearms from Intoxicated Uniformed Member of the Service"* and other appropriate Department procedures.

*NOTE*

*If the subject member is determined to be unfit for duty, the IAB Command Center will be notified at (212) 741-8401 and a log number will be obtained.*

**INTERIM ORDER NO. 52**

| | |
|---|---|
| ***ADDITIONAL*** ***DATA*** | *Members of the service are reminded of the contents of Patrol Guide procedures 203-04, "Fitness For Duty" and 204-08, "Firearms – General Regulations" as they relate to the use of alcohol and the possession of firearms while off duty.* |
| | *Members should be aware that it would be prudent not to ingest alcoholic beverages up to four (4) hours prior to the commencement of their tour of duty.* |
| ***RELATED*** ***PROCEDURES*** | *Firearms Discharge by Uniformed Members of the Service (P.G. 212-29)* *Removal of Firearms from Intoxicated Uniformed Member of the Service (P.G. 206-12)* |

   3.     Any provisions of the Department Manual or any other Department directive in conflict with the contents of this order are suspended.


**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All Commands**

**INTERIM ORDER NO. 52**

## APPENDIX "A"

<u>INDICIA OF INTOXICATION</u>

Face to face observation and interaction with the subject member allows the supervisor concerned to use his or her senses to obtain "evidence" of alcohol intoxication:

* The sense of sight
* The sense of hearing
* The sense of smell

<u>SIGHT</u>

* Bloodshot eyes
* Flushed face
* Soiled, mussed, disarrayed clothing
* Fumbling (e.g., dropping paperwork, keys etc.)
* The presence of alcohol containers
* Physical coordination (e.g., swaying, staggering, unsteady, falling, wobbling, sagging knees, using a wall or furniture as a prop)
* Unusual actions (e.g., hiccupping, belching, vomiting, fighting, sleepy, urinating)

<u>HEARING</u>

* Slurred speech
* Admission of drinking
* Inconsistent responses
* Incoherent
* Abusive language, profanity
* Antagonistic
* Unusual statements

<u>SMELL</u>

* Odor of alcohol on breath
* "Cover Up" odors (e.g., breath spray, mints)
* Open alcoholic beverages
* Unusual odors

*NOTE*:        These traits are illustrative; this is not meant to be a complete list of indicia.

**INTERIM ORDER NO. 52**

# EXHIBIT B

# PATROL GUIDE



| Section:   General Regulations | Procedure No:   203-04 |
|---|---|
| **FITNESS FOR DUTY** | |

| DATE ISSUED: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 07/21/00 | 07/28/00 | 00-03 | 1 of 1 |

**FITNESS FOR DUTY**

1. Be fit for duty at all times, except when on sick report.
2. Do not consume intoxicants to the extent that member becomes unfit for duty.

**ADDITIONAL DATA**

*Members of the service **SHOULD NOT** be in possession of their firearms if there is any possibility that they may become unfit for duty due to the consumption of intoxicants.*

*Any misconduct involving a member's misuse of a firearm while unfit for duty due to excessive consumption of, and intoxication from, alcohol will result in that member's termination from the Department. Exceptional cases will be determined by the Police Commissioner, on a case by case basis.*

*Furthermore, any misconduct involving members who are found to be unfit for duty due to excessive consumption and intoxication from alcohol, while armed with a firearm, will result in the inclusion of the charge of "Unfit For Duty While Armed," in Departmental disciplinary proceedings. In addition to those penalties imposed as a result of all other charges stemming from the misconduct, strict punitive sanctions will be imposed for any member upon whom the charge has been substantiated.*

*Additionally, a uniformed member of the service who refuses to submit to chemical testing in connection with an alleged violation of section 1192 of the New York State Vehicle and Traffic Law (Driving While Intoxicated) will be charged with violating Patrol Guide procedure 203-10, page 1, step 4, "Engaging in conduct prejudicial to the good order, efficiency, or discipline of the Department."*

*Members of the service are also reminded of the Department's commitment to the many counseling and assistance programs available for a wide variety of problems. Members who are experiencing problems related to alcohol, or know of any other member who may be experiencing problems related to alcohol, are strongly encouraged to call HELPLINE at (718) 271-7777, in order to achieve confidential assistance.*

# DEPARTMENT MANUAL REVISION NOTICE

| GUIDE: | NUMBER: | DATE ISSUED: | DATE EFFECTIVE: |
|---|---|---|---|
| **PATROL** | **01-03** | **11/30/01** | **12/07/01** |

1. Interim Order 38, series 2000 introduced the use of a Complaint Re-Classification Log to ensure proper and timely documentation of the **COMPLAINT FOLLOW-UP (PD313-081)**. Therefore, add the following new pages to existing Patrol Guide procedure 207-09, "Follow-Up Investigations of Complaints Already Recorded."

   **Ink Change**: Renumber P.G. 207-09, pages 1 and 2 to read 1 of 4 and 2 of 4.

   - 207-09, pages 3 and 4
   - Interim Order 38, series 2000 is **REVOKED**

2. Patrol Guide procedure 209-29, "Seizure of Unlicensed Tow Trucks," has been revised due to numerous procedural changes which clarify the circumstances under which an unlicensed tow truck may be seized and impounded. Therefore, replace the existing procedure with the revised attached procedure.

   - 209-29, pages 1 through 8
   - Interim Order 41, series 2000 is **REVOKED**

3. Patrol Guide procedure 210-07, "Prisoners - Unusual Occurrence," has been revised due to changes in the notification process for the New York State Commission of Correction. Therefore, replace the existing procedure with the revised attached procedure.

   - 210-07, pages 1 and 2
   - Interim Order 17, current series is **REVOKED**

4. Spofford Juvenile Center has changed its name to the Bridges Juvenile Center, located at 1221 Spofford Avenue, Bronx, N.Y. Additionally, the Vernon C. Bain Center no longer provides lodging for juvenile delinquents (male or female) who are not eligible for personal recognizance. All intake processing will take place at the Bridges Juvenile Center. Therefore, replace the existing procedure pages with the revised attached pages.

   - 215-09, pages 3 and 4 FINEST Message 013363, dated 12/29/99 is **REVOKED**

   **Ink Changes:**

   a. **Revise** Patrol Guide Procedure 208-42, "Arrest on a Warrant," "ADDITIONAL DATA" statement page <u>3</u>, second paragraph, Juvenile Center, Spofford House, and page <u>4</u>, subdivision <u>b</u>, Spofford Juvenile Center, to read:

      "Bridges Juvenile Center."

   b. **Revise** Patrol Guide Procedure 215-09, "Offense Committed by a Child Under 16 Years of Age (Other than a Juvenile Offender)," "Note" following step <u>6</u>, page <u>1</u>, Spofford Juvenile Center and step <u>20</u>, page <u>2</u>, Spofford Juvenile Center, to read:

      "Bridges Juvenile Center."

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# DEPARTMENT MANUAL REVISION NOTICE

| GUIDE: | NUMBER: | DATE ISSUED: | DATE EFFECTIVE: |
|---|---|---|---|
| **PATROL** | **01-03** | **11/30/01** | **12/07/01** |

5.   Patrol Guide procedure 216-01, "Aided Cases General Procedure" has been amended to include Lifenet as an additional referral program for counseling assistance outside the purview of this Department. Therefore, replace the existing procedure pages with the revised attached pages.

- 216-01, pages 3 and 4
- Interim Order 44, series 2000 is **REVOKED**

6.   Interim Order 30, series 2000, established a new procedure for court-ordered "assisted outpatient treatment" of persons found to require treatment for mental illness, and who have a history of non-compliance with psychiatric treatment. Therefore, insert new Patrol Guide procedure 216-17, "Involuntary Removals Pursuant to Mental Hygiene Law Section 9.60" in proper numerical order.

- 216-17, pages 1 through 6
- Interim Order 30, series 2000 is **REVOKED**

7.   **Ink Changes**:  Patrol Guide procedure 203-03, "Compliance with Orders," is being amended to reflect the required posting of the new Gun Safety Sticker that highlights safety precautions when loading and unloading firearms.

- Interim Order 23, current series is **REVOKED**

   a.   **ADD** to P.G. 203-03 new step "<u>8</u>", page "<u>1</u>", opposite caption "COMPLIANCE WITH ORDERS" to read:

   "<u>8</u>.   <u>Affix Gun Safety Sticker (SP414) to assigned locker and at all Department firearms safety stations</u>"

   b.   **RENUMBER** current step "<u>8</u>", to read: "<u>9</u>."

8.   **Ink Changes**:  Patrol Guide procedures 203-04, "Fitness for Duty," and 204-08, "Firearms – General Regulations," have been amended to clarify Departmental policy regarding the responsibility for uniformed members of the service to be fit for duty while armed.

- Interim Order 7, current series is **REVOKED**

   a.   **REVISE** P.G. 203-04 first paragraph opposite "ADDITIONAL DATA" statement on page "<u>1</u>", to read:

   "<u>ADDITIONAL DATA</u>    *All members of the service are required to remain fit for duty as specified above, and are reminded of their absolute responsibility to remain fit for duty while in possession of their firearms.*"

   b.   **REVISE** P.G. 204-08 step "<u>2</u>" subdivision "<u>e</u>", opposite "EQUIPMENT FIREARMS," on page "<u>1</u>", to read:

   "<u>e</u>.   <u>There is a likelihood that member will be consuming alcoholic intoxicants.</u>"

## NEW • YORK • CITY • POLICE • DEPARTMENT

# DEPARTMENT MANUAL REVISION NOTICE

| GUIDE: | NUMBER: | DATE ISSUED: | DATE EFFECTIVE: |
|---|---|---|---|
| **PATROL** | **01-03** | **11/30/01** | **12/07/01** |

9.   **Ink Changes**:  Patrol Guide procedure 207-08, "Preliminary Investigation of Vice, Narcotics or Organized Crime – Related Complaints," is being amended to ensure coordination of investigations involving child pornography.

   a.   **REVISE** the definition of "VICE OFFENSES" on page <u>1</u> to read:

   "VICE OFFENSES - <u>Violations of law related to gambling, prostitution, alcoholic beverages, cigarette tax and child pornography.</u>"

   b.   **ADD** the following paragraph to "ADDITIONAL DATA," page <u>4</u>, to read:

   ***"CHILD PORNOGRAPHY***

   *A complaint involving child pornography (photos, movies, computer images, etc.) will be referred to the Vice Enforcement Division's Sexual Exploitation of Children Squad for investigation. The Vice Enforcement Division will also investigate complaints involving other forms of sexual exploitation of children, including minors employed by peep shows, topless clubs, lap dancing clubs or escort services. Additionally, a telephone notification will be made to the Vice Enforcement Division when child pornography is found or an arrest is made for any violation of Penal Law Article 263."*

10.   **Ink Changes**:  Patrol Guide procedure 207-31, "Processing Civilian Complaints," has been amended to include a follow-up notification to the Internal Affairs Bureau Command Center.

   • Interim Order 29, current series is **REVOKED**

   a.   **ADD** new "NOTE," following step "4", page "3", to read:

   ***"NOTE***    *A follow-up notification to the Internal Affairs Bureau Command Center at (212) 741-8401, will also be made to obtain an Internal Affairs Bureau log number. Indicate that number on the top of the* **CIVILIAN COMPLAINT REPORT**, *under the caption I.A.B. LOG #."*

11.   **Ink Changes**:  Patrol Guide procedure 217-01, "Vehicle Accidents – General Procedure," has been amended to include a new Post Office Box for Police Accident Reports forwarded by this Department. The Mail and Distribution Unit will continue to forward these Reports to the Department of Motor Vehicles.

   • Interim Order 30, current series is **REVOKED**

   a.   **ADD** subdivision "a," to step "21", page "4", to read:

   *"<u>a</u>.   **Police Accident Reports** shall be placed in an envelope addressed to:*
   *New York State Department of Motor Vehicles*
   *Accident Records Bureau*
   *P.O. Box 2605*
   *Albany, New York 12220-0605"*

# NEW • YORK • CITY • POLICE • DEPARTMENT

# DEPARTMENT MANUAL REVISION NOTICE

| GUIDE: | NUMBER: | DATE ISSUED: | DATE EFFECTIVE: |
|---|---|---|---|
| **PATROL** | **01-03** | **11/30/01** | **12/07/01** |

12.    **Ink Changes**:  With the advent of the Citywide Intelligence Reporting System (P.G. 212-12) the **INTELLIGENCE REPORT (PD378-151)** has been eliminated. Therefore, make changes in ink on the following existing procedure pages:

| PROCEDURE | CHANGE |
|---|---|
| P.G. 207-11 | **Delete** step <u>20</u>, page <u>4,</u> and **Renumber** steps <u>21</u> and <u>22</u> to read:  <u>20</u> and <u>21</u>.<br>**Delete** INTELLIGENCE REPORT (PD378-151) page <u>5,</u> "FORMS AND REPORTS." |
| P.G. 209-16 | **Delete** INTELLIGENCE REPORT (PD378-151) page <u>2,</u>  "FORMS AND REPORTS." |
| P.G. 214-02 | **Delete** INTELLIGENCE REPORTS (PD378-151) step <u>8a</u>, page <u>1</u>.<br>**Delete** INTELLIGENCE REPORT (PD378-151) page <u>4,</u> "FORMS AND REPORTS." |
| P.G. 214-15 | **Delete** INTELLIGENCE REPORT (PD378-151) page <u>2,</u> "FORMS AND REPORTS." |

13.    **Patrol Guide Index Ink Change:**

200-04 page 13, under major caption **Mentally Ill or Emotionally Disturbed Persons** add new subcaption to read:

"Involuntary Removals Pursuant
to Mental Hygiene Law ……………… …....…………..216-17"

14.    The following Interim Orders have been incorporated into new procedures which were included in Patrol Guide Revision Notice 01-02, and are therefore **REVOKED**:

➤  Interim Order 32, series 1998, "New Department Form-Change of Emergency Notification (PD451-152)" incorporated into Patrol Guide Procedure 203-18, "Emergency Notification Procedure/Residence Requirements."

➤  Interim Order 56, series 1998, "Integrity Monitoring File," incorporated into Patrol Guide procedure 203-21, "Integrity Monitoring File."

➤  Interim Order 8, series 1999, " School Safety Agent-Victim of an Offense While Performing Duty," incorporated into Patrol Guide procedure 212-97, "School Safety Agent-Victim of an Offense While Performing Duty."

➤  Disregard any references to Administrative Guide procedures 319-35, 320-45, and 322-33 within Patrol Guide Revision Notice 01-02.

# NEW • YORK • CITY • POLICE • DEPARTMENT

# EXHIBIT C



# INTERIM ORDER

| SUBJECT: | **DEPARTMENT POLICY STATEMENT CONCERNING THE OPERATION OF A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL** | |
|---|---|---|
| DATE ISSUED: | REFERENCE: | NUMBER: |
| **05-17-02** | **PG 203-04** | **9** |

1.    Patrol Guide procedure 203-4, "Fitness For Duty" mandates the following:

    a.    Be fit for duty at all times, except when on sick report.
    b.    Do not consume intoxicants to the extent that member becomes unfit for duty.

Consistent with the above, any uniformed member of the service who causes serious physical injury to another person while operating a motor vehicle and is determined to be unfit for duty due to the consumption of alcohol will be terminated from the New York City Police Department, absent exigent circumstances.

2.    Additionally, any negotiated plea of a Department case involving a uniformed member of the service who is determined to have been operating a motor vehicle while unfit for duty due to the consumption of and/or intoxication from alcohol shall include a period of Dismissal Probation. Further, any such negotiation shall include the subject officer's agreement to submit to ordered breathalyzer testing while on duty during the period of probation. Should the member be found unfit for duty or refuse to submit to breathalyzer testing, this will result in additional disciplinary action against the subject officer which may include termination.

3.    Members of the service whose alcohol consumption has caused problems for them or others are urged to self-report before they are responsible for a serious incident and the above disciplinary action becomes necessary. They can do so in complete confidence by calling the Counseling Service Unit at (718) 834-8433 or (800) 431-4666. Additionally, members who are experiencing problems related to alcohol, are strongly encouraged to call *HELPLINE* at (718) 271-7777 or the Police Organization Providing Peer Assistance, (POPPA), at (1-888-267-7267). POPPA is a joint labor-management cooperative effort involving the implementation of a union-operated, alternative employee assistance program. Both HELPLINE and POPPA offer confidential services.

4.    Members of the service with alcohol-related problems may also be referred to the Counseling Services Unit by supervisors, other Department units, or as the result of an alcohol related incident. However, the Department's objective, at all levels, is early detection and referral of personnel for evaluation and treatment *before* drinking causes problems in work performance or worse.

5.    The Counseling Services Unit maintains strict standards of confidentiality as set forth in Title 42 of Federal guidelines governing alcoholism programs, and it does not act as part of the Department's disciplinary system. CSU's mission is to assist in recovery and return to full and productive service those members of the Department who are experiencing problems with alcohol. The unit operates 24 hours a day, seven days a week, and will help assess the extent of the problem, and make the appropriate referrals for treatment. Treatment can range from detoxification and inpatient rehabilitation to outpatient rehabilitation and the participation in self-support groups. Counseling is available to members of the service, their families and retirees.

6.      The Police Department's policy is to encourage members of the service to seek help in a supportive, confidential environment before the consequences of alcohol abuse require the Department to take disciplinary action.  In addition, to assist those members of the service experiencing alcohol related problems, all New York City Police Department personnel are encouraged to refer those with problems to any of the counseling/assistance providers indicated in paragraph three of this directive.

7.      Any provisions of the Department manual or other Department directives in conflict with the contents of this order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All commands**

**INTERIM ORDER NO. 9**

# EXHIBIT D



## PATROL GUIDE

| Section:  Personnel Matters | Procedure No:  205-30 |
|---|---|

### ADMINISTRATION OF DRUG SCREENING TESTS FOR CAUSE

| DATE ISSUED:<br>01/01/2000 | DATE EFFECTIVE:<br>01/01/2000 | REVISION NUMBER: | PAGE:<br>1 of 4 |
|---|---|---|---|

**PURPOSE**     To investigate and detect illegal drug use by members of the service (uniformed and civilian).

**SCOPE**     The administration of drug-screening tests are procedures utilized by this Department to detect the presence of drugs in the urine or hair of members of the service suspected of illegal drug usage.  To balance the public interest in having a drug-free Police Department against the individual employee's right to privacy, drug-screening tests will be administered when there is a reasonable suspicion to believe that an individual member of the service (uniformed or civilian) is illegally using drugs. When reasonable suspicion does exist, the member suspected of using drugs <u>MUST</u> provide the drug-screening samples when directed; refusal will result in immediate suspension from duty and subsequent service of charges and specifications.

**PROCEDURE**     When a member of the service suspects that another member (uniformed or civilian) may be using drugs illegally:

**MEMBER OF THE SERVICE**     1.     <u>Immediately</u> notify commanding officer/duty captain <u>or</u> Internal Affairs Bureau Command Center ([212] 741-8401).
     a.     Provide rank, name and command of suspected member.

**COMMANDING OFFICER/ DUTY CAPTAIN**     2.     Notify Internal Affairs Bureau Command Center and obtain a log number.

<u>SUPERVISOR DIRECTED TO CONDUCT INVESTIGATION</u>

**SUPERVISOR CONDUCTING INVESTIGATION**     3.     Determine if a <u>REASONABLE SUSPICION</u> has been established indicating drug use.

*NOTE*     *<u>Reasonable Suspicion</u> - Exists when evidence or information, which appears reliable, is known to the police supervisor and is of such weight and persuasiveness as to make the supervisor, based upon his/her judgement and experience, reasonably suspect that a particular member of the service is illegally using drugs.  A reasonable suspicion that a member is illegally using drugs must be supported by specific articulable facts from which rational inferences may be drawn.  Reasonable suspicion cannot be based upon mere "hunch" or <u>solely</u> upon poor work performance.*

     4.     Prepare **INVESTIGATING OFFICER'S REPORT (PD313-153)** and record observations and other pertinent data.

*NOTE*     *If suspicion of drug use is based on observation of the suspected member's physical appearance, at least two (2) supervisors must make observations.*

     5.     Prepare a case folder for documentation of <u>all</u> aspects of investigation.

### NEW • YORK • CITY • POLICE • DEPARTMENT

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 205-30 | 01/01/2000 | | 2 of 4 |

| | | |
|---|---|---|
| **SUPERVISOR CONDUCTING INVESTIGATION (continued)** | 6. | Confer with own immediate supervisor if reasonable suspicion has been established that member is using drugs illegally. |
| | 7. | Contact bureau chief/counterpart/borough commander, upon completion of investigation to obtain approval for drug screening tests. |
| | | a.  If circumstances indicate drug-screening samples must be obtained expeditiously, <u>immediately</u> contact bureau chief/counterpart/borough commander for approval. |
| **BUREAU CHIEF/ COUNTERPART/ BOROUGH COMMANDER** | 8. | Approve request for drug screening test <u>ONLY</u> after carefully determining that investigating supervisor's report has established reasonable suspicion. |
| | 9. | Direct that member giving drug screening samples be placed on modified assignment pending results of test, unless other circumstances warrant suspension. |
| *NOTE* | | *Approval of bureau chief/counterpart/borough commander <u>must</u> be obtained prior to administration of the drug-screening tests. If bureau chief/counterpart/borough commander is <u>not</u> available, executive officer concerned or duty chief, may be contacted for approval.* |
| **SUPERVISOR CONDUCTING INVESTIGATION** | 10. | Contact Medical Division ([718] 760-7632) when approval is received for administration of drug screening tests and obtain serial numbers. |
| | | a.  Obtain serial numbers even if member refuses tests. |
| | | b.  Include drug screening tests serial numbers in case folder along with all other documentation. |
| *NOTE* | | *If Medical Division is closed, contact Sick Desk supervisor ([718] 760-7606).* |
| | 11. | Advise member suspected of drug usage that refusal to give samples will result in immediate suspension from duty. |
| | 12. | Notify the Department Advocate that drug screening tests were ordered, provide all pertinent information and obtain identity of member notified. |
| | | a.  Notify Medical Division to make entry in "Drug Screening Test Log" under caption "DEPARTMENT ATTORNEY NOTIFIED." |
| **MEMBER CONCERNED, MEDICAL DIVISION** | 13. | Inform investigating supervisor where samples will be taken and procedure to be followed. |
| | 14. | Maintain "Drug Screening Test Log" in an appropriate Department record book, captioned across a double page, as follows: |

| FIRST PAGE | | | | | | |
|---|---|---|---|---|---|---|
| **DRUG SCREENING TEST#** | **DATE/TIME** | **NAME OF MEMBER TESTED** | **TAX REGISTRY NUMBER** | **COMMAND** | **MEMBER REQUESTING TEST** | **COMMAND** |

| SECOND PAGE | | | | | |
|---|---|---|---|---|---|
| **DELIVERING OFFICER** | **DATE/TIME OF DELIVERY** | **DEPARTMENT ATTORNEY NOTIFIED** | **WITNESS TO TEST** | **RESULTS OF TEST** | **REMARKS** |

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 205-30 | 01/01/2000 | | 3 of 4 |

**ADDITIONAL DATA**

*A police surgeon, specifically a medical doctor employed by the Department, may order drug-screening tests without securing prior approval of the bureau chief/counterpart/ borough commander concerned. However, when a police surgeon desires tests for a member of the service he suspects of illegally using drugs, the police surgeon will confer with the Supervising Chief Surgeon or designee, if feasible.*

*To further protect the employee's right to privacy in those cases in which the results of the drug-screening test do not indicate the presence of a narcotic substance or marijuana, the investigator's case folder will be sealed. The folder will not be unsealed without the written authorization of the Deputy Commissioner - Legal Matters. The case folder will be filed in the appropriate borough Investigations Unit with a copy to the Internal Affairs Bureau. Furthermore, any reference to the administration of the drug-screening tests in the personal folder of the member concerned will be expunged.*

*An investigating supervisor finding controlled substances contraband, i.e., drugs or instruments used to administer drugs, e.g., hypodermic syringes/needles, crack pipes, etc., on or in the vicinity of a suspected member of the service (uniformed or civilian) will have such items invoiced on **PROPERTY CLERK'S INVOICE (PD521-141)** as investigatory evidence and comply with the pertinent provisions of P.G. 218-24, "Processing Controlled Substances/Marijuana Stored At Station Houses" and P.G. 218-25, "Processing Controlled Substances/Marijuana Not Stored At Station Houses". In addition, the investigating supervisor will have the following statement printed in large block letters on top of the INVOICE:*

*"NOT TO BE DESTROYED WITHOUT APPROVAL OF DEPARTMENT ADVOCATE'S OFFICE."*

*Privacy and dignity will be protected. The urine specimens will be given in maximum feasible privacy. Except in unusual circumstances, only one (1) person of the same sex will be present with the testee to observe the sample being given.*

*Two (2) urine samples will be taken, each in a separate vial. Prior to testing, the code number assigned by the Medical Division and date of test will be affixed to each vial. The code number will be logged separately with the member's name. The member being tested and the witness will then initial the vial stickers. The vials will be sealed in the member's presence after the urine sample has been given. Appropriate procedures will be followed at all times to maintain a chain of custody.*

*Three (3) samples of hair will be taken, cut as close to the scalp as possible. The samples should be taken from the same body area, preferably the head. The samples will be placed in the supplied envelopes, appropriately identified, sealed and initialed by both the subject and the collector. These envelopes will be placed in plastic bags and sealed by the collector and then initialed by the test subject. Appropriate procedures will be followed at all times to maintain a chain of custody.*

*One (1) or more scientifically accepted initial screening tests will be employed in analysis. Positive reports will be made only after final confirmation.*

*Positive test samples will be maintained by the analyzing laboratory in a secure area, and remain confidential unless and until Department disciplinary charges and specifications are served. A member whose test(s) are positive may, within sixty (60) days of notification of such results, submit a written request to the Department Advocate's Office for further retesting of the original sample(s).*

**NEW • YORK • CITY • POLICE • DEPARTMENT**

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 205-30 | 01/01/2000 | | 4 of 4 |

**ADDITIONAL DATA (continued)**

*When retesting urine, a Department chemist and member designated by the Department will accompany the sample during retesting in order to preserve the chain of custody. When retesting hair, the third sample of hair stored at the Medical Division will be forwarded to a lab of the member's choice. The lab must be certified to perform drug testing by New York State, the United States Department of Health and Human Services or the College of American Pathologists. Appropriate procedures will be followed at all times to maintain a chain of custody.*

*All retesting expenses, including chain of custody, will be paid by the affected member of the service.*

*Positive test results, which indicate illegal or illicit drug use, will result in Department charges and specifications, and suspension.*

*The unauthorized use or ingestion of commercially available products or substances including foods, cosmetics, and alleged health care products that contain or may contain illegal drugs (including marijuana) or their derivatives or active ingredients by any member of the service is prohibited. The unauthorized use or ingestion of these products would not be a valid defense for positive results on a drug test and would constitute sufficient cause for disciplinary action, including termination.*

**RELATED PROCEDURES**

*Reporting Violations Observed By Supervisors (P.G. 206-01)*
*Preparation of Charges and Specifications (P.G. 206-05)*
*Service And Disposition Of Charges And Specifications (P.G. 206-06)*
*Interrogation Of Members Of The Service (P.G. 206-13)*
*Cause For Suspension/Modified Assignment (P.G. 206-07)*
*Suspension From Duty-Uniformed Menbers Of The Service (P.G. 206-08)*
*Modified Assignment (P.G. 206-10)*

**FORMS AND REPORTS**

**INVESTIGATING OFFICER'S REPORT (PD313-153)**
**PROPERTY CLERK'S INVOICE (PD521-141)**

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# EXHIBIT E



## PATROL GUIDE

| Section: Personnel Matters | | Procedure No: 205-29 | |
|---|---|---|---|
| **RANDOM DRUG SCREENING** | | | |
| DATE ISSUED:<br>01/01/2000 | DATE EFFECTIVE:<br>01/01/2000 | REVISION NUMBER: | PAGE:<br>1 of 2 |

**PURPOSE**     To randomly test uniformed members of the service in an effort to establish a credible deterrent to illegal drug/controlled substance usage.

**SCOPE**     The Department's goal is to ensure that uniformed members of the service do not use illegal drugs or abuse drugs/controlled substances and maintain a high standard of performance in a safe, drug free environment.

*NOTE*     *Uniformed members of the service assigned to commands within the Organized Crime Control Bureau, Internal Affairs Bureau and probationary police officers in training at the Police Academy will be subject to separate random drug screening procedures.*

**PROCEDURE**     To randomly identify uniformed members of the service for illegal drug/controlled substance testing:

**C.O., MEDICAL DIVISION**
1. Direct Management Information Systems Division to identify uniformed members of the service for automated random testing by utilizing the department's personnel database.
   a. Individual members selected for testing will be identified by social security number.
2. Direct members selected to appear at the Medical Division at appropriate date and time.

**UNIFORMED MEMBER OF THE SERVICE SELECTED FOR TESTING**
3. MUST report to Medical Division when notified, except if member is on:
   a. Sick report
   b. Regularly scheduled day off
   c. Military leave
   d. Annual vacation
   e. Terminal leave
   f. Bereavement leave.

*NOTE*     *Members previously scheduled for individual days off (other than regular days off) may be excused with the approval of the bureau chief concerned. Members scheduled for court or training on the 8x4 tour will appear for testing immediately upon completion of court or training session. Members scheduled for a 12x8 tour on both the day prior to <u>and</u> the scheduled test date will appear for testing during the 8x4 tour on the testing date. Members reporting sick on the assigned test date will be required to visit a Police Surgeon and obtain approval for excusal from the test. Members missing a scheduled test for any reason will be rescheduled for testing as soon as possible irrespective of any random sampling selection.*

4. MUST submit to drug screening. Refusal to submit to test will result in suspension and will be grounds for dismissal from the Department.
5. Prior to testing, prepare form listing all foods ingested in the past twenty-four (24) hours, and alcohol, mixers and medicine ingested in the past seventy-two (72) hours.
6. Present shield and identification card upon request at testing location to insure proper individual has reported for testing.
7. Comply with instructions received at testing location.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 205-29 | 01/01/2000 | | 2 of 2 |

**ADDITIONAL DATA**

Privacy and dignity will be protected. Except in unusual circumstances, urine samples will be taken at a facility operated by the Medical Division, or at another health care facility. The samples will be given in maximum feasible privacy when urine samples are collected. Only one (1) person of the same sex will be present with the person being tested. Except in unusual circumstances, the monitor will be a supervisory officer/ health care professional assigned to the Medical Division. The supervisory officer/health care professional monitoring the procedure will observe the sample being given.

Two (2) samples will be taken, each in a separate vial. Prior to testing, a code number assigned to the member and the date of the testing will be affixed to each vial. The code number will be logged separately with the member's name. The member being tested will then initial the vial stickers. The vials will be sealed in the member's presence after the sample has been given. Appropriate chain of custody procedures will be followed at all times.

One (1) or more scientifically accepted initial screening tests will be employed in analysis. A positive report will be made only after final confirmation. Negative test results will not be maintained, but will be destroyed.

Positive test samples will be maintained by the analyzing laboratory in a secure area, and will remain confidential unless and until Department disciplinary Charges and Specifications are served. A member whose test is positive may, within sixty (60) days of notification of such result, submit a written request to the Department Advocate's Office for further independent retesting of the original sample.

For urine, a Department chemist and a member designated by the Department will accompany the sample during retesting in order to preserve the chain of custody. All retesting expenses, including chain of custody, will be paid by the affected member of the service.

Testing will only be done for illegal drugs and controlled substances. No other substances will be screened. The testing dates will not be announced in advance. Positive test results, which indicate illegal or illicit drug use, will result in department Charges and Specifications and suspension.

The unauthorized use or ingestion of commercially available products or substances including foods, cosmetics, and alleged health care products that contain or may contain illegal drugs (including marijuana) or their derivatives or active ingredients by any member of the service is prohibited. The unauthorized use or ingestion of these products would not be a valid defense for positive results on a drug test and would constitute sufficient cause for disciplinary action, including termination.

**RELATED PROCEDURES**

Suspension From Duty Uniformed Member Of The Service (P.G. 206-08)
Administration Of Drug Screening Tests For Cause (P.G. 205-30)
Drug Screening Tests For Uniformed Members Of The Service Applying For Assignments To The Internal Affairs Bureau And Detective Bureau (P.G. 205-31)
Drug Screening Tests For Uniformed Members Of The Service As A Condition Of Discretionary Promotion (P.G. 205-34)

## NEW • YORK • CITY • POLICE • DEPARTMENT

# EXHIBIT F